**Albert BRUNNER, Appellant (Plaintiff below),**

v.

**Wilbur BUNN and Ethel Bunn, husband and wife, Appellees (Defendants below).**

**No. 3934.**

Supreme Court of Wyoming.

July 15, 1971.

Joseph E. Darrah, Powell, for appellant.

J. D. Fitzstephens, of Goppert, & Fitzstephens, Cody, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Albert Brunner sued his neighbors, Wilbur Bunn and Ethel Bunn, because their cattle on "numerous occasions" had gotten into plaintiff's pasture lands, hay field and hay stack.

Counsel for the plaintiff concedes Wyoming is one of the open range states and that one can collect damages for encroachment by his neighbor's cattle only if the plaintiff has his lands enclosed with what is described in the statutes as a "lawful fence." See §§ 11–531 through 11–534, W.S.1957. Plaintiff alleges he built such a fence in 1962.

Mr. Bunn admits his cattle on occasions got onto Brunner's land. Also, he does not dispute whether the fence when built by Brunner in 1962 was sufficient to qualify as a lawful fence. The question, however, is whether there was a lawful fence enclosure about plaintiff's lands when the cattle of Mr. and Mrs. Bunn got onto Brunner's property.

The district court, without a jury, heard evidence on that issue and decided for the defendants, decreeing plaintiff should take nothing. Plaintiff Brunner has appealed and it is for us to decide whether the evidence was such—viewed in the light most favorable to defendants—that the court was justified in finding as it did.

For the benefit of counsel in future cases, we think we should say the record in this case is such that an accurate review of the testimony is impossible. Throughout the trial witnesses testified about places and happenings by pointing to something and saying such as "about here" or "along here." Apparently much of it was on a blackboard which did not get into the record. There is a plat in the record but places on it were not identified in the testimony in such a way that an appellate court could know what was pointed out. In general, we do not know in this case whether a witness was pointing to a plat or a blackboard.

Regarding proof of damages, the plaintiff testified to much frustration with cattle of the defendants and told of times when they were on his property and driven off. If the trial court had found him entitled to damages, there would have been very little in the evidence for the court's use in measuring and fixing damages.

For purposes of deciding appellant's appeal, however, we find so much testimony favorable to the defendants that we can do nothing but affirm the trial court. On

the critical issue of whether plaintiff had a lawful fence enclosure at the time when defendants' cattle broke in or got onto plaintiff's lands, the evidence was definitely in conflict—making it necessary for us to disregard the testimony of plaintiff and his witnesses and to accept as true the testimony of defendant Bunn and his witnesses.

There was testimony that ditches or holes were washed under plaintiff's fence from irrigation water in 1963, which allowed defendants' cattle to go under the wires. Apparently this was the first time. As to later times, witness after witness testified sand had drifted along the fence for about a quarter of a mile, until only the top two wires were exposed. The witnesses testified the fence then was only about two feet high and cattle could go over it.

It is admitted there is a "gap" or possibly two gaps at the north end of the plaintiff's pasture. One gap was for the purpose of letting Brunner's cattle down to the river for water. It is not too clear what this gap is like but apparently the wires were on top of the posts so cattle could go under. The plaintiff admits he kept a salt lick in the vicinity of the water opening.

Brunner himself testified the cattle of defendants came in at other places; that he had seen them do so; and that cattle of other people could not get to the gaps at the north end of his place on account of the river and steep banks. Other witnesses, however, testified the livestock of other people could and did enter at the water opening.

Aside from these matters, there were witnesses who described the general condition of plaintiff's fence as poor. Some said the posts were too far apart. One testified 14 to 20 feet apart and another said 17 to 26 feet apart. Several said the wires were loose, with staples gone. At least one person said the fence had curves but no braces at the curves. There was also evidence that some of the posts had rotted and were broken off. One witness claimed there were deer trails where the wires were loose and staples out, making it appear deer had knocked the staples out.

We are sure plaintiff and his attorney were intent, at the time of trial, on convincing the trier of the merits of plaintiff's complaint. As far as making a case on appeal is concerned, appellant is handicapped by the fact that the trial judge walked around the fence and viewed it, with counsel on either side present. We have no way of knowing what he saw. Hence, it would be difficult to reverse him.

Appellant's attorney suggests the inspection came after trial and several months after the filing of plaintiff's complaint. In the absence of evidence as to what was different between the time of the complaint and time of inspection, we cannot indulge in this consideration.

Affirmed.